All right. We're prepared to begin argument now. Second case and Mr Monte Murano. Morning, Honor. I'm Michael Monte Murano and I represent appellant David Parker with regard to this appeal of his criminal conviction. I'm appointed by this court by virtue of the fact that I served as standby counsel for Mr Parker upon appointment by the District of Maryland prior to Mr Parker's trial. Simple fact that underlies this appeal is that the government and their brief is a ribbon with this error fails to understand the difference between standby counsel and actual counsel. In the view of the government, it appears that having someone in a suit sitting next to Mr Parker or any criminal defendant is indeed adequate to fulfill the constitutional obligations imposed upon the courts of this nation. I submit to the court that the government has conceded the underlying factual basis for this appeal and it is clear in their in their brief and we see it between pages 25 and 30 of their brief at page 27. It is set out very clearly they agree that the advisement of Mr Parker never is completed in the crucial proceeding on the 20th of December 2011 because of the need that is perceived at that point for a psychological evaluation of Mr Parker. And the government says, well, why complete this advisement until we have the evaluation complete? Accepting that premise, the question then becomes, why was the advisement never completed at some other date? The record is entirely silent as to this advisement being undertaken. It is commenced. The government acknowledges it. It's at page, I believe, page 48 of the Joint Appendix, where a citizen U.S. Attorney Johnston says, we want to make sure a noise Now, the government artfully attempts to conflate this situation with the issue of competency, an issue which is not raised in this brief. One is reminded of the old adage that when all you have is a hammer, everything tends to look like a nail. The government has neither the factual nor legal basis to underlie their position, so they have attempted to divert this court's attention, trying to pull it within the four corners of the Bernard opinion authored by Judge Thacker only last year. I respectfully submit that is a form of obfuscation that this court should not buy into. This is not a question of competence, and we have not raised it as a question of competence because the question of competence is never addressed below. There's an evaluation done. There's no record as to what the court considers. I mean, we recognize, of course, that there's a difference between a competency to stand trial and the ability to represent oneself. Now, there's the whole question here, I think, is the adequacy of the inquiry, making sure that the defendant understood the rights. But it seemed the government is indicating that Judge Motz bent over backwards to try to make certain that this defendant understood exactly what he was giving up. And if in the face of the defendant's insistence that he wanted to go to trial and to present his sovereign citizen's arguments himself, if Judge Motz had said, no, you cannot represent yourself, then we would be up here on a Feretta violation. So Judge Motz was in a situation of where he'd be darned if he did and darned if he didn't. So he did. So what he did was he, as I say, on three separate occasions, say, you know, you understand how important the right to counsel is. Are you sure you want to do this? And you have to give a district court some discretion as to his evaluation of the defendant's response. He's in the best position to know whether the defendant is really insisting on representing himself as long as an adequate inquiry is undertaken. And it wasn't just once, but as I understand it, it was three different times that he inquired of this. The mere inquiry the court points to is not adequate. Number one. Number two, Your Honor. Did you object to that at the time? Not my job to do so. I wasn't present at the time, number one. But did anybody object to the adequacy of the inquiry at the time? I think it was attenuated due to the reference to a mental health professional for an evaluation. When the matter came back into court next. I mean, because this is a, I wonder if we're not up here on plain error and whether people were just waiting to see what the result of the trial was and then bring up this issue on appeal. Well, I'm asking when you were before Judge Mott's, did anyone object? And I was, you know, a standby counsel. You would be the obvious one to object. Did you object to the adequacy of the inquiry that Judge Mott's was undertaking? I did not object. It was not my place to object. And the ship had sailed by time I was appointed. That's the point I'm trying to make. Did anybody object? There was no basis for an objection in December because the advisement was curtailed as the government argues appropriately. And it was never resumed in April. Indeed, when we come back to court in April, the court proceeded without any counsel for Mr. Parker, because Mr. Iwanogi apparently was late and the court was very frustrated with him and terminated his representation via telephone. The magistrate court also explained the right to counsel to appellant, correct? By that point, Mr. Parker had already been prejudiced by having been forced to proceed without counsel against his wishes. He had asked for standby counsel. He said, I'd like to have him participate in December. That right was terminated in April, and the next advisement did not take place until June 7th. Most respectfully, somebody has to be accountable for what happened in April and what happened between April and June. But to follow up, because Judge Hamilton has a question. Yes, Your Honor. I'm a little bit confused. If you were standby counsel and you said it was not your right to object, then why is this issue before us? I'm not sure I follow. My understanding of the role of standby counsel, as I lay out in my brief, is to serve as a resource for the defendant who is trying the case. In essence, counsel of record is Mr. Parker. I understand that. But you said that it was not your right or your, I guess right is as good a word as any, your right to object when you were serving as standby counsel to whether or not he was competent to waive his right to counsel. Did he ever raise that himself? No, he did not. And I respectfully submit suggesting that he is not competent to waive the right is to misunderstand the position of appellant. Our view is that it did not rise to the question of whether or not Mr. Parker was competent to represent himself or to waive the right to counsel. He was never advised adequately of the rights he was foregoing. That advisement was curtailed in December. It was never resumed. We have no understanding on the record before us what the results. I mean, Judge Thacker raised the point about a magistrate judge conducting an inquiry into the import of what was being done. And that was at the defendant's initial appearance and arraignment on June 7th. Six months later. Yeah, 2012. And Judge Conley, when you read that transcript, it goes on. He really went extensively into the defendant's wishes regarding representation. I mean, it's page after page in the record. And that's on top of the hearing on April 27th, 2012. And then there was the earlier hearing in December 20th, 2011, where the district court says, The defendant, I want to advise the defendant these are legal issues. The counsel is trained to represent the client's interests. Counsel, do a better job here. Are you sure you want to do this? You know, if this is inadequate, I don't know what a district court can do, really. I don't know how the district court could have made this any more adequate. I mean, the Supreme Court has said somebody has a right to represent themselves. And as foolish as it may be, that's the right that they have under the Supreme Court's decision. And, you know, and you have a district judge that was as conscientious as this one did, as this one was. And a magistrate judge that was as conscientious as this one was. And you're saying that's inadequate. Then I don't know what would be adequate. I don't choose to describe a district judge who throws up his hands, not figuratively, but actually, and says, It's not my problem, but you don't understand. And that's cited in the brief. That's in the record. Most respectfully, Judge Motz's palpable frustration is clear from the paper record. I cannot imagine what a videotape or a recording might have demonstrated. The simple fact is Judge Motz perceived, and the government has chosen to run with this proposition, that Mr. Parker's desire was to advance the sovereign citizen defense and was frustrated with his attorneys that their failure to do so. I think the record more appropriately supports the notion that he cleaves to the sovereign citizen defense, the flesh and blood defense, for lack of anything better to do, lacking legal training, because he's so frustrated at the job done by his attorneys. And we lay this out in detail in our brief. In October, Mr. Parker comes in. He doesn't understand what's going on. He says that repeatedly. And Judge Day attempts to, in essence, extract from him an understanding. And that's laid out over several pages in our brief. Where were the two attorneys of record at that point? Because there were two on the record. Where were they in advising this individual in advance of this proceeding? Is it reasonable to suggest that an attorney takes the client to court and doesn't explain what's going to happen, make sure he understands, et cetera? Do I take a client into court without explaining these things to him? I suggest not. And I don't think that's based upon 30 years of experience. I think that's based upon simple competence. To suggest that his attorneys were doing anything prior to December is to be awfully kind and gracious towards their lack of performance. And I have no idea what Ms. Hart-Edwards' position was, because her appearance is not stricken until the following June, but she never appears in court, never seems to do anything. So what we have here is somebody who is, for lack of an option, cleaving to this sovereign citizen defense for no other reason than his attorneys are not doing their job. And this is all he knows how to do. And that is what the district court fails to explore. It begins an exploration. I concede that in December. It never completes it because of the bump in the road of the question of competency. He's referred for a competency evaluation. There's no finding on the record. It's never probed by an attorney before the attorney is discharged. The attorney is discharged in December, yet there's a competency evaluation being sought. Excuse me? Do we not have the cart before the horse here? And that period after December. Judge Hamilton has a question. Yes, Your Honor. What about the finding by Dr. Bloomberg that he found the plaintiff competent and found him competent and that he understood the right to counsel? Perhaps that's Dr. Bloomberg's view. It's never probed on cross. He never takes the stand, and there's never a finding put on the record by the court that it has adopted these findings. Did he ever ask to have that put on the record? Did he ever ask to have that explored? At that point, he was bereft of counsel because counsel had been relieved via phone before the question of the evaluation could be addressed in April. The record is plain. Judge John Iwanogi is relieved by Judge Motz in the first few pages of the April proceeding. At that point, we have an evaluation. We don't know what's done with it. Nothing's ever done with it. The government never puts it on the record that will the court be adopting the findings by Judge Bloomberg. Nothing. They submit an order to the court. The court signs off on it, and that's it. Well, I'm kind of like Judge Wilkinson. He was advised. He repeatedly indicated he didn't want counsel once before the magistrate, two before the district court prior to trial, and the fourth time the first day of the trial before the district court. Now, what more could the district court have done? The man said he didn't want counsel. As a matter of fact, he said this court wasn't in the United States, which the judge told him that the whole courtroom was in the United States. I don't know what more could have been done. The mere question by itself in the view of appellant is not adequate to underlie a waiver of the constitutional right to counsel. It's as simple as that. That question was not enough, and the Benchbook for U.S. District Court Judges lays out the detailed colloquy that the court should at least aim toward, if not reach. That was not done in this matter. Let me answer this last question. Did the plaintiff ever request a hearing on the matter? I don't know that Mr. Parker knew how to do that. Well, did a standby counsel ever request a hearing? Not the place of standby counsel to do that. That's not what I was appointed to do. Most respectfully, I was there as a resource. It was not my job to interject. It would have been inappropriate. I was not counsel of record. The docket reflects counsel of record because there's no other way to plug in standby counsel and enter your appearance. But the role of standby counsel was made clear to me upon my appointment, to serve as a resource to Mr. Parker. I just want to make a point back to Judge Hamilton's question about the competency report. I thought I heard you indicate that the district court never took note of that, but the district court did, right before trial, acknowledge that a mental examination was done, and there turned out that there was no basis for finding that you were not competent to represent yourself and were bound by that. I respectfully submit that's closing the barn door long after the horses evacuated the structure. We're talking about a passing reference at the end of July for a competency evaluation conducted in January, during which time Mr. Parker has been bereft of counsel without an ability to challenge it. It's far too late, far too little, if the court, Your Honor, finds that an adequate adoption of Judge Bloomberg's, I mean, Dr. Bloomberg's findings. Dr. Bloomberg's never asked to testify. There's never a challenge to that because Mr. Parker has no understanding of how to do that. He has no understanding of how to do that because he's not a lawyer, but he's being held to the standard of lawyer by the district court. It is an abject failure of the need we all have to effectuate the Sixth Amendment rights that attach to all of us. Thank you, Your Honor. Do you have any further questions? No, thank you. Mr. Nitze? Good morning, Your Honor. Paul Nitze appearing on behalf of the United States. Is there anything that the panel has overlooked? And we've all three asked questions. Is there anything that our questions have overlooked in terms of our understanding of the case that you want to add to? Well, with the court's indulgence, I would like to maybe step through the chronology of this case a bit because with all due respect to opposing counsel, I believe there's been a bit of a sleight of hand with respect to how matters progress, both with respect to appointment of counsel and also with respect to the competency hearing and then finally with respect to the Feretta advisement. So just to set the stage a little bit, there is no magic litany of questions that a district judge must use when advising a defendant of his right to counsel and a corresponding waiver of that right. Rather, Feretta simply says that the waiver must be clear and unequivocal, one, two, that it must be a knowing, intelligent, and voluntary waiver, and three, that it must be timely. So that's the test that is at issue here in this appeal, and that's a test that can be met at any point across the duration of the case from initial charging through trial, and it can be met not just by the colloquy, the question and answer between the district court and the defendant, but also by the district court's observation of the defendant throughout the proceedings. And one thing that I think is very important as this court considers this case on appeal is that Judge Motz had the opportunity to view and interact with Mr. Parker on multiple occasions over many days and many hours of court proceedings, as did I and my co-counsel and as did Mr. Montemorano, a standby counsel, during the trial itself. So this was not just a question of the responses as those responses are memorialized in the written record in this case. This is also very much the district court's discretion and wisdom with respect to his observations of the defendant. So with all that said, stepping through, I believe that there were some errors in how Mr. Montemorano presented this case to the panel. Mr. Parker is originally charged by complaint in July of 2011. He makes his first appearance in court in August of 2011, August 22nd. At that point, he's discharged by complaint and he appears with the benefit of counsel. John Chambl from the Federal Public Defender's Office is there at the time that he is advised. Subsequently, he is indicted a few days later in August, and then we come to the October 24th hearing in front of Judge Day. The October 24th hearing, Mr. Parker is present with John Iwanage. Now, Mr. Montemorano makes much of the fact that a woman named Angela Hart-Edwards appeared or entered her appearance on behalf of Mr. Parker, but never showed up in court and was not actually stricken from the record until June of 2012. And what I would respectfully submit to the panel is that's of no moment because while Ms. Hart-Edwards may not have been diligent in her practice insofar as she never filed a motion to withdraw and never appeared to help the defendant at all, there were other counsel who appeared on the defendant's behalf, so this was not in any way something that prejudiced the defendant. So on October 24th, Mr. Parker appears with John Iwanage, and there is this back and forth where Judge Day expresses some concerns about the fact that the defendant is engaging in gamesmanship with the court, but nonetheless, the defendant is advised of the charges and he's also advised of his legal rights going forward. Then we come to the next court hearing, which is in December of 2011. Well, first of all, Mr. Parker was represented by John Iwanage at that hearing. So he was represented and he also advised the court at that point that he wished to proceed pro se. Now, what had happened up to that point is that both the counsel for the United States, myself and Ms. Johnston, as well as the court had developed some concerns that there might be a competency issue here, because starting in the summer of 2011, continuing up through that point, there had been a flurry of sovereign citizen pro se motions submitted by the defendant. So out of an abundance of caution, the United States, via correspondence with the court, requested a competency hearing, which is what was later conducted by Dr. Blumber, which is the subject of the report that is filed in the Sealed Joint Appendix. The reason why there was not much of a record built in this case as to the competency evaluation is because the competency evaluation was never requested either by the defendant himself, representing himself pro se, or by his counsel. And so to the extent that Judge Motz did not make extensive oral or written findings with respect to competency, either at the April 27th motions hearing or then later at the July trial, that's because the competency hearing was not up in the air. There was nothing to resolve because the competency hearing was never a contested issue between the parties. The competency hearing was something that the competency. Isn't the question of competency simply separate and apart from the question? I mean, they're two distinct questions, aren't they? They are distinct. They are distinct questions, but it's my impression, having read Defense Counsel's brief, that competency is sort of an underlying sort of sub rosa issue in that brief. If there's a suggestion that part of the reason why a more robust Feretta advisement was necessary was because competency was somehow close to the line. But absolutely, Judge Wilkinson, as a legal matter, competency is a separate issue. And frankly, to the extent that it. I mean, really, this is not. It's very straightforward. And that is whether the judges below, Judge Motz and Judge Conley, made an adequate inquiry, isn't it? That's right. I would say that's right, and I would just simply add two things to that. I think two other factors, in addition to the adequacy of the inquiry, which, of course, it's my position, was fully adequate. Especially, and Judge Wilkinson, you've already made reference to the June 7th advisement on the second superseding indictment. And that stretches seven or eight pages on the record where Judge Conley. It goes on and on and on. It goes on and on and on. And it's telling, Your Honor, that nowhere in the defendant's brief can he point to a right that is implicated by the U.S. District Court benchmark, of which Mr. Parker was not advised at some point. So, yes, the June 7th hearing, Judge Conley took pains, great pains, to walk the defendant through the various rights that he would be giving up if he represented himself pro se. But to step back, not only is it an issue before the Court as to the adequacy of the Ferretta advisement, I think this Court may also look to two other things which are important. One is, is this a situation where, and here referring to Bernard, is this a situation in which the defendant's invocation of his desire to represent himself pro se was an invocation that was equivocal or made sort of in passing? Because one could certainly envision circumstances in which a defendant makes a vague, sort of wishy-washy or equivocal request to represent himself. And that kind of a request where a defendant is maybe going back and forth during a hearing as to whether he or she wishes to proceed pro se, that's the kind of request that understandably should raise a red flag for the District Court and should at that point lead to a pause and a searching inquiry. That is not what we've got here. We have a situation in which the defendant could not have been more clear across the course of these proceedings that he wanted to represent himself. And maybe the best summary of that, Your Honor, is in the Blumberg report where Mr. Parker reports the following to Dr. Blumberg, who by the way is the single most experienced forensic competency examiner in the state of Maryland. And what Dr. Blumberg reports is as follows. Mr. Parker was well aware of the various activities and functions that a defense attorney can perform. He appears to have lost faith in his attorney's representation of him based upon his not knowing or receiving various motions that he hoped or anticipated would be filed on his behalf. He clearly recognizes, however, that he will need an attorney to at least help him with various legal procedures. And I anticipate that if he and defense counsel spend more time collaborating that he's likely to allow defense counsel to more fully represent him. So this is someone who understands the nature of what a defense attorney can accomplish for him. But as is evident from other portions of the report and also from portions of the record, you know, Mr. Parker does not have, he does not put a lot of stock in lawyers. He's not a big fan of lawyers. And he doesn't believe that they are going to do the job that he feels needs to be done. And so that's why he wants to represent himself. So to return, though, this is a situation in which he could not have been more clear. At various points in the record, Judge Motz makes explicit note of the fact that he wants to represent himself. And I have no doubt, Your Honor, that if it were permitted, that Mr. Parker would rather be here today than Mr. Montemorano, even though Mr. Montemorano is, of course, doing a fine job on his behalf. Mr. Parker expressed confidence and just tremendous consistency in that. We understand that part. And so, and then the third and last thing I would say is that the court, the court can also take note of the fact that Mr. Montemorano was present. And that's why I'm asking for a plain error review here. That and the lack of any equivocation. We're in a very different situation from the one presented in Singleton and in Bush, where this court applied de novo review of a court's decision, a trial court's decision with respect to appointment of counsel. Here we have a situation in which the court was really acquiescing to the defendant's clearly stated wishes. Whereas in Singleton, which was a 1997 opinion authored by Judge Neumeier, that was a situation in which the defendant in the middle of trial indicated that he wished to proceed pro se. And that's very different. In Bush we had a situation in which the defendant was forced by the district court to proceed with counsel against his wishes. So under those circumstances where a defendant's wishes are articulated to the court and where the court for whatever reason decides to go against those wishes and force the defendant to proceed with counsel, that's a circumstance in which de novo review may well be appropriate. And that is, of course, the precedent of this court. But where the trial court, without any contrary indication from the defendant, is going along with the defendant's clearly stated wishes to represent himself, then it should be plain error. And to the extent there's any doubt about whether plain error review applies in this case. I don't even know that we need to go there because the question is, I mean, given the first two factors, which is the intense exploration by the district judge and the absolutely unequivocal insistence, they seem to me the most critical. In any event, I'm going to ask my co-panelists if they have any further questions of you. Judge Hamilton, any questions? No. No, thank you. All right. Thank you very much. We have no further questions. Thank you, sir. Thank you. With respect to opposing counsel, he misstates the record in this case. There was no concern on the part of the government arising in the summer. The flurry of motions that Mr. Nitze refers to began the day before the December motions hearing. It's plainly clear in the appendix at page five, docket entry 34, filed on the 19th of December, the day before the first of the sovereign citizen motions filed by Mr. Parker. This is not a longstanding concern over which the government was wringing its hands. This arose the day before. Indeed, there's a discussion in the transcript of the need to provide copies to the government, which they had not yet received, and whether or not we could go forward on those motions on this 20th of December. That then led to the discussion of why the motions were filed, because of the dissatisfaction with counsel and the belief that counsel was not representing Mr. Parker adequately. And let us not forget, Judge Motz bought into that. He volunteered to Mr. Parker at a later proceeding that he didn't think Mr. Parker's attorneys were doing a very good job. On his own, for which he deserves great credit, because I think that's a fair way to describe what's being done. Because even if they're meeting the standards of what attorneys should do, they are not meeting the standards of client communication and explaining to Mr. Parker so he can understand. And his lack of understanding is throughout the record in this matter. And that's what leads him to say, I've got no choice. I must represent myself because they're not doing a very good job. They're not doing a job. They're not explaining anything. That the government chooses to describe unfairly, I respectfully submit, as gamesmanship. With all due respect to Dr. Blumberg, not Judge Blumberg, the second time I've misstated it that way, he is not a legal professional. His statement that Mr. Parker understood what a lawyer could do is of no moment before this court, because it's never been explored by an attorney under oath in a hearing. Indeed, the only time it's ever pointed out, it's ever suggested that it was considered by the court, is long after the horse is out of the barn, as Judge Thacker had pointed to in July at the beginning of trial. Taking Judge Wilkinson's argument to its logical, and I would suggest absurd, extreme, Your Honor seems to believe that the advisement in June is adequate, or an advisement in July is adequate. Would then an advisement after trial be adequate, Your Honor? When does it need to be done? It needs to be done early enough so that somebody can be prepared for trial if they're appointed as counsel, or that the defendant has enough time to do what he needs to do. That advisement does not take place. Judge Mott says on the 27th of April, the hearing when Mr. Iwanoge is discharged by a phone, what do I tell him? It's in the record. It's in my brief. I quoted. I couldn't have written the language better myself as an advocate for Mr. Parker's position. What am I supposed to tell him about representing himself? That's an adequate advisement? That's not all the transcript says, though. Of course it's not. He then advises him. But not adequately. The court has not confronted the situation that it finds itself in at that point. I mean, I hesitate to use the word. With all respect, you seem to want to take a snippet of what happens and say, although this was not adequate, you seem to wish to avoid the totality of the circumstances here. And I don't blame you. It's a divide-and-conquer strategy. But you know that that's what you're pursuing here, and we know it. Of course, Your Honor. And Mr. Nitz is doing the same for the factual and legal arguments that support him. But what I suggest is it's less an issue of choosing snippets than it is the situation where, if you walk across a concrete sidewalk. You point with one line of the transcript, and you say, is that adequate? Is that adequate? But, of course, there were three different hearings stretching over a period of roughly six months by several different judges, and they occurred, you know, with months' intervals between them. And he's insisting, as Mr. Nitz points out, on representing himself. It's not an equivocal thing. But there's no objection. The district judge, the magistrate judge are all leaning over backwards to make certain that the waiver is voluntary and intelligent, and you just can't come back to that with a little snippet here and a little snippet there. Equivocal isn't the problem, most respectfully, Your Honor. Mr. Nitz points out the standard. It can't be equivocal, and we don't suggest he's at all equivocal. But the fact that he's adamant doesn't make him right. The question then becomes knowing and intelligent. If I claim the earth is flat, no matter how much I might insist, the question then becomes, what am I basing this on? It is the lack of a knowing and intelligent waiver upon which we focus in the brief, and I suggest this court should focus in determining this case. The simple fact is it's not explained to him adequately. The colloquy in the bench book is what is the ideal, and it is not even approached by the court, which says, what do I tell him about waiving his right? That's the problem. It's the lack of knowing and intelligent, not that it's unequivocal. He doesn't know what he's doing. To quote St. Thomas More, he hath not the competence. He's not a lawyer, and it's not explained to him. And it's clear even as far back as December that his lawyer hasn't explained it to him, and that's why he wants to get rid of him. And it's even clearer before in October when he's not prepared for a mere arraignment. It seems to me at the end of the day you just disagree with the Supreme Court's decision in Perella. Not at all. And that's fine. But I'm having a hard time listening to your opinion and finding out what person would ever be able to invoke his right to pro se representation or what inquiry would ever be adequate or what insistence would ever be unequivocal enough. I mean, it seems like to me you are out to nullify the Feretta right. Not at all. And there were a lot of people that disagreed with Feretta, and it was a hotly contested decision. But there it is. The Supreme Court handed down the decision.  I completely agree, Your Honor. And I think we honor and respect Feretta by ensuring that a defendant is adequately advised. Indeed, you ask who could do it, and I tell you who could do it. David Parker could do it had he been adequately advised, which he was not. Thank you, Your Honors. Mr. Mone-Morano, I want to thank you for your representation of your client.  Thank you, Your Honor. We would like to come down and greet counsel, and then we'll take a brief recess.
judges: J. Harvie Wilkinson III, Stephanie D. Thacker, Clyde H. Hamilton